GEORGE DAVID *vs.* COMMISSIONER OF INSURANCE.

No. 97-P-254.

Hampden. March 15, 1999. - November 7, 2001.

Present: ARMSTRONG, C.J., GREENBERG, & LAURENCE, JJ.

*Insurance,* Agent, Broker, Revocation of broker's license. *Administrative Law,* Adjudicatory proceeding, Standard of proof, Substantial evidence, Judicial review.

In a civil action appealing a decision of the Division of Insurance revoking the plaintiff's insurance agent and insurance broker licenses after the plaintiff had been convicted of committing Federal crimes in the course of his insurance-related business, there was substantial evidence to support the division's decision that the plaintiff was unfit to hold an insurance license. [164-167]

CIVIL ACTION commenced in the Superior Court Department on November 10, 1995.

The case was heard by *Judd J. Carhart,* J.

*Paul M. Stein* for the plaintiff.

*James S. Whitcomb,* Assistant Attorney General, for the defendant.

ARMSTRONG, C.J. In 1992, George W. David pled guilty in United States District Court to charges of conspiracy to defraud the United States (18 U.S.C. § 371 [1994]) and tax evasion (26 U.S.C. § 7201 [1994]). The criminal charges against David arose from his business as an insurance agent and broker.[1] He

---

[1] In a charging instrument (criminal information) the government alleged that, in furtherance of a conspiracy with and on behalf of John Verducci, David purchased annuities (insurance products), rare coins, and a condominium in order to conceal Verducci's ownership interest in these assets from the Internal Revenue Service. The government also alleged that David had committed perjury before a Federal grand jury investigating Verducci's assets. David, waiving indictment, pled guilty to a single count of conspiracy and to a single count of wilfully evading his own personal Federal income tax li-

was sentenced to serve a twelve-month prison term to be followed by a three-year term of supervised release.

The licensure of insurance agents and brokers in Massachusetts is regulated by the Division of Insurance. On October 26, 1994, well after the period of incarceration was over, the division ordered David to show cause why the insurance commissioner should not make a determination that David had failed to maintain the qualifications of trustworthiness and suitability required of insurance agents and brokers by G. L. c. 175, §§ 163 and 166. As grounds therefor, the division cited David's convictions and his failure to disclose that a criminal information was pending against him when he submitted written applications to the division in May and September of 1992 for appointment as agent for various insurance companies doing business in the Commonwealth. The division sought an order revoking all licenses held by him. David filed an answer in which he denied the division's principal allegations, interposing a defense that the amended order to show cause was overly vague and ambiguous.

An adjudicatory hearing was conducted on January 19, 23, and 26, 1995. The division called as its sole witness the director of its special investigations unit, who presented documentary evidence. David testified. He also called fourteen witnesses and introduced affidavits from thirty-five individuals, who all spoke to his good character.

In a written decision dated October 11, 1995, the presiding officer determined that David's felony convictions, based on acts performed in his insurance business, were evidence of his untrustworthiness and that David's failure to disclose his convictions and his incarceration to the division was indicative of a failure of full rehabilitation sufficient to rebut the evidence of untrustworthiness.

The presiding officer ordered, among other things, the revocation of all licenses issued by the division to David.[2] On that

---

ability by falsifying business deductions on his 1988 Federal income tax return.

[2]The presiding officer also ordered (a) the payment of a fine in the amount of $300 (see note 7, *infra*) and that David cease and desist from the unlawful

same day (October 11),[3] the commissioner affirmed the decision and disposition of the presiding officer.[4] By a letter dated October 26, 1995, David complained that the commissioner had decided the appeal without waiting for a statement of grounds. The commissioner replied that she was treating the letter as a request for reconsideration and, having reconsidered, she again affirmed the division's decision.

David appealed to the Superior Court pursuant to G. L. c. 30A, § 14, seeking a reversal of the division's decision to revoke his insurance licenses. A Superior Court judge upheld the division's decision but ordered a stay pending appeal.

*Substantial evidence.* There is substantial evidence to support the division's decision that David was unfit to hold an insurance license measured by the standard mandated by G. L. c. 175, §§ 163 and 166.

Review of an administrative agency's decision pursuant to G. L. c. 30A is not de novo but is limited to the standards of

and deceptive acts in which he had been found to have engaged; (b) the disposition by David of any interest held by him, as a proprietor, partner, stockholder, officer, or employee of any licensed insurance agent or broker; and (c) that he be prohibited from transacting any insurance business, acquiring any such business, or accepting employment in any insurance business in the Commonwealth, without the prior approval of the commissioner of insurance.

[3]It is not uncommon for the presiding officer's decision and the commissioner's order of affirmance to issue the same day, see, e.g., *Blue Cross & Blue Shield of Mass., Inc.* v. *Commissioner of Ins.,* 420 Mass. 707, 708 (1995); *Bankers Life & Cas. Co.* v. *Commissioner of Ins.,* 427 Mass. 136, 137 (1998). What is unusual here is that the presiding officer, in her decision, made reference to the commissioner's order of affirmance. In other circumstances, this fact might cast doubt on the validity of the division's decision; however, the presiding officer's findings and conclusions of law here are based on the record evidence and reflect the officer's independent and comprehensive evaluation of that evidence.

[4]In her order affirming the division's decision, the commissioner noted that, pursuant to 18 U.S.C. § 1033(e) (1994), newly enacted at that time, a conviction of a felony involving dishonesty or a breach of trust subjected a person engaged in the business of insurance to restrictions in activities affecting interstate commerce. The commissioner stated: "It is important that the citizens of Massachusetts have confidence that the [d]ivision ensures that only those who meet the requirements of G. L. c. 175, § 163, are permitted to act as insurance agents."

review set forth in § 14(7) of that chapter[5] and confined to the record of administrative proceedings under § 14(5). *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971).

" 'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1. "Judicial inquiry under the substantial evidence test is limited to the determination of whether, within the record developed before the administrative agency, there is such evidence as a reasonable mind might accept as adequate to support the agency's conclusion." *Seagram Distillers Co.* v. *Alcoholic Bevs. Control Commn.*, 401 Mass. 713, 721 (1988). "If there is such evidence, we affirm the agency's action even though we might have reached a different result if placed in the position of the agency." *Ibid.*

The Commonwealth's insurance laws require that an individual be a "suitable and competent" person in order to act as an insurance agent. See G. L. c. 175, § 163, as appearing in St. 1971, c. 968. § 3. Likewise, to hold a brokerage license, an insurance broker must be a "suitable person" and be "trustworthy and competent." See G. L. c. 175 § 166, as amended through St. 1977, c. 1000, § 4. The term "suitable person" is understood to require "a combination of trustworthiness and competence." *Deluty* v. *Commissioner of Ins.*, 7 Mass. App. Ct. 88, 91 (1979). "Trustworthiness and competence are thus requirements for the issuance of a broker's license (whether or not they are exhaustive); and where the expectations of conduct in accordance with those requirements are not met, revocation is an obvious sanction." *Ibid.* The same holds true for an insurance agent under § 163.[6]

Here the crimes of which David was convicted, as the presid-

---

[5]An agency's decision may be overturned only in limited circumstances, namely, if the agency's decision violates a constitutional provision; is in excess of its statutory authority or jurisdiction; is based upon an error of law; is made upon unlawful procedure; is not supported by substantial evidence; is unwarranted by the facts; or is arbitrary, capricious, or an abuse of discretion.

[6]We reject David's suggestion that the statutory provisions require, at a minimum, a finding that the agent or broker pose a harm to the public before the division can revoke an insurance license. "As a general matter, a statute

ing officer found, by their very nature bespoke a lack of trustworthiness and exhibited business and personal conduct that is antithetical to the standard of trustworthiness, suitability, and competence required of an individual holding an insurance license. David committed the crimes in the course of his insurance-related business, and he utilized his knowledge of the insurance industry in furtherance thereof. Both the criminal scheme and the tax evasion were purposeful. Thus, the convictions alone constituted substantial evidence to support the division's conclusion that David was unfit to hold an insurance license. In so concluding, the presiding officer did consider testimonial evidence of David's good character. We are required to accept the presiding officer's assessment both of the credibility of witnesses and the weight to be accorded the evidence. In any event, the determination must be upheld under c. 30A, § 14(7), because the evidence was such as "a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6).

David argues that there was no substantial evidence to support the idea, referred to both by the presiding officer and by the commissioner in her affirmance, that revocation was necessary to ensure public confidence in the integrity of those licensed by the division to service and sell insurance in the Commonwealth. The record, argues David, refutes that idea, because the fourteen witnesses who testified and thirty-five who filed affidavits all proclaimed their complete confidence in David despite his convictions. It is the role of the commissioner, however, to maintain and enforce the standards of trustworthiness and competence for insurance agents and brokers, and that function calls for an exercise of discretion and judgment that must be respected by the court. For the court to rule that the commissioner's determination as to the requisite standards of conduct was offset by the number of friends and customers the plaintiff could rally to his cause would in effect be to substitute

which merely regulates business interests need not specify with great particularity the relevant considerations with respect to whether to revoke a license . . . . It is enough that the [agency] exercise its discretion fairly and not act in an arbitrary and capricious manner." *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 128 (1985), quoting from *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 462 (1983).

the court's judgment of suitability for that of the commissioner. The judge was correct to resist the temptation.[7]

*Judgment affirmed.*

---

[7]In addition to revoking David's licenses to act as an agent or broker and ordering him to dispose of his interest in his agency (see G. L. c. 175, §§ 163, 166B), the division fined David $300 for what the presiding officer described as "technical violations" of G. L. c. 176D, § 3(5). The finding was based on evidence that, following the docketing of the information charging David with the Federal offenses, but before his guilty pleas, David filed three applications with the division for appointment as agent of three insurance companies, failing therein to disclose that the information against him was pending. (On each application he answered "no" to this question: "Have you ever been convicted of, or arrested or prosecuted for, any crime or offense against the laws of this or any other state or country, . . . or is there pending against you any indictment, complaint or proceeding for a violation of such laws? [If yes, attach details]"). The presiding officer classified the nondisclosure as "technical" because, before filing the applications, David consulted with counsel who advised him that the information was not a "proceeding" within the meaning of the application's question. We need not decide whether that advice excused the nondisclosure, because, as observed by the single justice of the Supreme Judicial Court, the plaintiff failed to file a timely appeal to that court under G. L. c. 176D, § 8; and David did not raise and argue the issue in his appeal to the Superior Court. In any event, the presiding officer made it clear that, in view of the legal advice, she did *not* take the answers (which she treated as false) into account as "constitut[ing] evidence of untrustworthiness, incompetence or unsuitability." (The presiding officer did fault the plaintiff, however, for his failure to notify the division following his convictions and for continuing to operate his agency through others during the period of his incarceration without the advice of the division.)