Kenton-Walker, Janet, J.
Pursuant to G.L.c. 30A, §14, the plaintiffs, Twenty-Eight Ten-Citizen Groups formerly represented by Kirstie L. Pecci, Ann Fenwick-Beinema, Larry Beinema, Will Gallien, James Sottile, Lynne Simonds, and John Pulawski (“plaintiffs”), seek judicial review of a decision (“Decision”) of the Town of Southbridge Board of Health (“Board”) approving Southbridge Recycling and Disposal Park, Inc.’s (“SRDP”) request to make a minor modification to the site assignment under which it operates the landfill and processing facilities at 165 Barefoot Road in Southbridge, Massachusetts. The action is now before the court on the plaintiffs’ Motion for Judgment on the Pleadings, filed pursuant to Mass.RCiv.P. 12(c) and Superior Court Standing Order 1-96. For the following reasons, the plaintiffs’ motion is DENIED.
BACKGROUND
The SRDP is the operator of the Southbridge Sanitary Landfill at 165 Barefoot Road in Southbridge, MA (“Landfill”). SRDP also owns and operates a construction and demolition Processing Facility adjacent to the Landfill. Prior to these proceedings, SRDP operated the facilities under an existing site assignment decision issued on April 15, 1999.[4] On February 27, 2008, pursuant to the provision of G.L.c. Ill and 310 Code of Mass. Regs. 16.00 et seq., SRDP submitted an application titled Request for Minor Site Assignment Modification (“application”). The application requested modifications to the existing site assignment so that SRDP could (1) accept a larger volume of waste at the Landfill Facility by reallocating waste from the Processing Facility, and (2) allow the Landfill Facility to accept waste from the Processing Facility regardless of geographic origin.[5]
In response to SRDP’s application, the Board held a series of eleven public hearings beginning on March 27, 2008, and ending at approximately 12:40 A.M. on May 21, 2008.[6] The Hearing Officer admitted the Twenty-Eight Ten-Citizen Groups, represented on review by their attorneys, as interveners. In order to determine whether the proposed minor site assignment modification would result in a threat to public health, safety or the environment, the Board heard testimony from approximately sixty participants and received seventy-two exhibits and seven chalks. The Ten-Citizen Groups presented witnesses, cross-examined the Board’s witnesses, submitted and responded *360 to motions, presented opening statements and submitted closing arguments, as well as a proposed decision. On June 9, 2008, the Board issued a forty-eight-page decision granting the application for a minor site assignment modification subject to fifty-eight detailed and specific conditions.
Pursuant to G.L.c. 30A, §14, the plaintiffs filed a complaint for judicial review on July 8, 2008, and under Superior Court Standing Order 1-96 and Mass.R.Civ.P. 12(c), subsequently filed this motion for judgment on the pleadings seeking relief from the administrative decision of the Board.
DISCUSSION
I. Standard of Review
“In reviewing a board’s decision, we are required to ‘give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.’ ” Iodice v. Architectural Access Bd., 424 Mass. 370, 375-76 (1997), quoting G.L.c. 30A, §14(7). The Court is “not empowered to make a de novo determination of the facts, to make different credibility choices, or to draw different inferences from the facts found by the [boardl.” Pyramid Co. of Hadley v. Architectural Barriers Bd., 403 Mass. 126, 130 (1998).
The board’s decision must be upheld if it is supported by substantial evidence. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm., 385 Mass. 651, 657 (1982). “Substantial evidence” is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). To determine if the Board’s decision is supported by substantial evidence, the court is obliged to “examine the entire administrative record and take into account whatever detracts from its weight.” Pyfrom v. Comm’r of the Dep’t of Pub. Welfare, 39 Mass.App.Ct. 621, 624-25 (1996).
“[A] local board of health must make an actual finding that the facility ‘would constitute a danger’ in order to deny the application.” Wood Waste of Boston, Inc. v. Board of Health of Everett, MICV1996-2642 (Mass.Super.Ct. Dec. 21, 1998) (Sosman, J.) [9 Mass. L. Rptr. 425], quoting G.L.c. 111, §150A.[7] “The board may include in any decision to grant a site assignment such limitations with respect to the extent, character and nature of the facility or expansion thereof, as may be necessary to ensure that the facility or expansion thereof will not present a threat to the public health, safety or the environment.” 310 Code Mass. Regs. §16.20(12). The board, however, is not required to grant a conditional site assignment when the applicant has not produced any credible evidence that it would comply with applicable statutes, regulations, and policy requirements. TBI, Inc. v. Board of Health of North Andover, 431 Mass. 9, 15 n.7 (2000).
A person aggrieved by a board’s site assignment decision may appeal that decision under G.L.c. 30A, §14. See G.L.c. Ill, §150A (providing that a local board of health is a “state agency” for purposes of appellate review). Pursuant to the provisions of G.L.c. 30A, the court may then set aside the board’s decision if it determines that the substantial rights of any party have been prejudiced because the “decision is — (a) In violation of constitutional provisions; or (b) In excess of the statutory authority or jurisdiction of the agency; or (c) Based upon an error of law; or (d) Made upon unlawful procedure; or (e) Unsupported by substantial evidence; or (f) Unwarranted by facts . . . ; or (g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with the law.” G.L.c. 30A, § 14(7). The party, appealing an administrative decision bears the burden of demonstrating its invalidity, Merisme v. Board of Appeals of Motor Vehicle Liab. Policies & Bonds, 27 Mass.App.Ct. 470, 474 (1989) (citations omitted), and judicial review is confined to the administrative record. G.L.c. 30A, §14(5).
Each of the plaintiffs’ numerous and well-articulated challenges to the Board’s Decision shall be considered in turn, in accordance with the foregoing standard of review.
II. Standing
The defendants assert that the plaintiffs have no standing to appeal the Board’s site assignment decision because the plaintiffs have failed to demonstrate “aggrievement.” The issue of standing has already been addressed by this court. Sturbridge Board of Health v. O’Leary, WOCV2008-1532, Memorandum of Decision and Order (Mass.Super.Ct. February4,2009) (Kern, J.) [25 Mass. L. Rptr. 171]. There, the court stated that “once a person is permitted to fully participate in the administrative proceeding as an inter-vener, he is aggrieved by an adverse decision and entitled to seek judicial review of the decision.” Id. at 5-6. See also Andover v. Energy Facilities Siting Bd., 435 Mass. 377, 378 n.3 (2001) (interveners granted full party status in administrative proceeding had standing to seek judicial review under statute analogous to G.L.c. 30A). Compare Robinson v. Dep’t of Pub. Utilities, 416 Mass. 668, 668-69 (1993) (affirming denial of “aggrieved party status” to appeal where plaintiff was not a full party to underlying administrative proceeding).
General Laws chapter 111, section 150A, provides that “[a]ny person aggrieved by the action of the department in granting or refusing to grant such permit, may appeal said decision pursuant to the provisions of section fourteen of chapter thirty A.” G.L.c. Ill, §150A. The text of chapter 30A provides that “any person or appointing authority aggrieved by a final decision ... shall be entitled to a judicial review . . .” G.L.c. 30A, §14. Whether a party has been “aggrieved” depends upon whether that party’s substantial rights have been prejudiced. See G.L.c. 30A, §14(7); Duato v. Comm’r of Pub. Welfare, 359 Mass. 635, 637-38 (1971); Shaker Community, Inc. v. State Racing Comm'n, 346 Mass. 213, 216 (1963) (“We rec *361 ognize that the words ‘person . . . aggrieved’ as used in Section 14 are not to be given a narrow construction”).
Under the applicable Code of Massachusetts Regulations, the definition of a “party” includes a “group of ten citizens or other intervener duly registered pursuant to 310 Code Mass. Regs. §16.20(9)(b).” 310 Code Mass. Regs. §16.20(3). “Ten Citizens Groups" are then presumed to be “specifically and substantively affected” and are therefore eligible to register as a party to a public hearing “in which damage to the environment ... or public health and safety are or might be at issue; provided, however, that such intervention shall be limited to the issues of impact to public health, safety and damage to the environment...” 310 Code Mass. Regs. §16.20(9)(b).
In the underlying administrative matter, the plaintiffs were granted full party status, allowed to intervene by the Board, and extensively engaged in the hearings which give rise to this chapter 30A appeal. The analysis and logic of this court’s earlier order is in accordance with the law of this Commonwealth and the court therefore declines to dismiss the plaintiffs’ motion for lack of standing.
III.Legal Composition of the Southbridge Board of Health
The plaintiffs argue that the Board is illegally constituted and therefore lacked jurisdiction to render the decision currently under review in this appeal. The plaintiffs, as Ten-Citizen Groups, have been granted the right to intervene in these proceedings. 310 Code Mass. Regs. §16.20(9)(a)(2). However, their standing is limited to issues that impact “public health, safety and damage to the environment and the elimination or reduction thereof ...” Id. Ten-Citizen groups, therefore, do not have standing to raise the collateral issue of whether the Board was legally constituted. Id.
Furthermore, the legality of the composition of the Southbridge Board of Health is beyond the scope of review allowed under this proceeding.[8] Review under G.L.c. 30A, §14, “is limited to determining whether the agency’s decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law.” Arlington Retirement Bd. v. Contributory Retirement Appeal Bd., 75 Mass.App.Ct. 437, 441 (2009); David v. Comm’r of Ins., 53 Mass.App.Ct. 162, 164-65 (2001) (“Review of an administrative agency’s decision pursuant to G.L.c. 30A is not de novo but is limited to the standards of review set forth in §14(7) of that chapter... and confined to the record of administrative proceedings under §14(5)”). The court therefore declines to consider whether the Board was legally constituted and proceeds with this review under the presumption that the Board’s decision was duly authorized.
IV.Bird Strikes
The plaintiffs argue that the record with respect to bird strikes is not supported by substantial evidence, does not reasonably support the Board’s decision, and is therefore arbitrary and capricious. The record reflects that the Board duly considered ample evidence on which to base its decision that birds will not constitute a danger to public health, safety or the environment. Further, the Board imposed extensive conditions on the Landfill Facility designed to control and monitor potential bird hazards. (A.R. 3605.) Far from being arbitrary or capricious, the conditions set forth in the Decision show the thoughtfulness and thoroughness of the Board. “(T]he Board has imposed Conditions, 35, 36, 37, 38, 49 and 58, which include a bird control plan, increased monitoring, reporting, oversight and the ability of the Board to place limits on the Landfill Facility.” (A.R. 3605.) The bird control program also includes harassment measures intended to reduce bird congregation, disturb bird habitation and ultimately eliminate gulls, should it become necessary.[9] (A.R. 3605-06.)
Although the Board did not find the birds a danger to public health and safely, it did “take seriously the potential for hazards to aircraft.” (A.R. 3605.) The record indicates that the Board considered the testimony of the Landfill Manager, John Farese, and the Director of Landfill Operations for SRDP’s parent company, Casella Waste Systems, Inc. (“Casella”), John Schwalbe. Both Mr. Farese and Mr. Schwalbe testified that there have been no problems at the Landfill associated with the birds and their potential hazard to aviation. (A.R. 595, 736.) James Latour, the manager of the nearby airport, Southbridge Municipal, testified that he has not seen any evidence of bird nesting and reported that there were no problems with dead birds or flocks of dead birds. (A.R. 990.)
The mere fact that birds pose a potential hazard to aviation, as testified to by Ron Merritt, birdstrike expert, and confirmed by the Federal Aviation Administration advisory circular No. 150/5200-33, does not make the Board’s decision arbitrary or capricious. In light of the extensive testimony that birds do not currently pose a hazard to the Southbridge Municipal Airport, and the conditions set forth in the Decision to control any future problems that might arise, the court finds that the Board’s decision with regard to bird strikes was supported by substantial evidence such “as a reasonable mind might accept as adequate to support [its] conclusion.” G.L.c. 30A, §1(6).
V.Minor vs. Major Modification of Site Assignment
The plaintiffs argue that the Decision should be set aside or modified because it illegally effected a major modification to the site assignment. For the following reasons, this argument must fail.
*362 What constitutes a major versus a minor modification to a site assignment is delineated in 310 Code Mass. Regs. §16.22, Modifications to and Recisions and Suspensions of Site Assignments.[10] In that section, major modifications to site assignments are described to include expansions to the site, alternate uses for the site, or requests to waive any of the site suitability requirements of 310 Code Mass. Regs. §16.40(3). 310 Code Mass. Regs. §16.22(2). Minor modifications, on the other hand, are described as those which are not major modifications and not modifications instituted by the Board of Health or the Department of Environmental Protection due to a threat to public health, safety or the environment. 310 Code Mass. Regs. §16.22(3). Minor modifications also include requests to modify conditions placed by the Board of Health and non-emergency requests to increase daily or annual tonnage limits. Id.
Here, SRDP included two requests in its application for a minor modification to its existing site assignment. First, the request sought a reallocation of waste from the Processing Facility to the Landfill Facility which included an overall increase in the average tons of MSW, per year and per day, disposed of at the Landfill. Second, the request sought permission for the Landfill to accept MSW and residue from the Processing Facility irrespective of its originating geographic location. SRDP characterized the scope and impact of its modifications as narrow. The Board agreed with SRDP’s characterization of this request as a “minor” modification to its site assignment. (A.R. 3583 (“The Board has concluded that the Application requested a minor modification, as that term is used in 310 Code Mass. Regs. §16.22(3)”).) In addition, the Secretary of Energy and Environmental Affairs concluded that the changes contemplated by SRDP in its application would require a minor site assignment modification from the Sturbridge Board of Health. (A.R. 1321.)
The plaintiffs’ assertion that the modification request is “major” rather than “minor” rests mainly on their contention that the Board’s decision improperly expanded the acreage of the site-assigned area. The plaintiffs correctly point out that expanding the size of the site-assigned area requires a request for a major modification, which in turn carries with it additional investigative, reporting and evaluation requirements. See 310 Code Mass. Regs. §16.22(2). However, the Board indicated in its decision that the site assignment would not be expanded by this application. (AR 3600 (”[t]he boundaries of the Landfill Facility will not change . . .”)); (AR 3607 (“the limits of the Landfill Facility will not change due to this modification . . .”)). The record shows that 82.2 acres were site-assigned in the 1999 decision. (A.R. 2209-2211; A.R. 2243.) The record also shows that approximately 60 acres were site-assigned in 1979. (A.R. 1077-1080.) Although there is some confusion between the area site-assigned and the area site-assigned for disposal this ambiguity does not vitiate the site assignment as asserted by the plaintiffs. This modification does not seek to expand the size of the site-assigned area, nor does the decision implicitly authorize an expansion. The application was therefore correctly characterized as a minor modification well within the Board’s jurisdiction under 310 Code Mass. Regs. §16.22(3). The Board’s decision, therefore, does not offend G.L.c. 30A, §14(7), and will not be set aside on this ground.
VI. Processing Facility
The plaintiffs argue that the Board’s decision illegally expanded the site-assigned acreage and use by incorrectly assuming the Processing Facility was site-assigned. The record shows, however, that the Processing Facility is site-assigned both as to the acreage on which it operates and as to the use for which it exists. The acreage on which the Processing Facility sits is included in the land originally deeded by George Corriveau to the Town of Southbridge and site-assigned as a sanitary landfill in the 1979 Decision. (A.R. 1080-84; A.R. 1108.) The Board then changed the name of the site from a “Sanitary Landfill Facility” to a “Solid Waste Management Facility” for the express purpose of allowing processing of solid waste in the site-assigned area. (A.R. 1107-08.) The Processing Facility, as part of the site-assigned Solid Waste Management Facility, is therefore properly site-assigned and the plaintiffs’ arguments to the contrary must fail.
In addition, processing is likely allowed as an alternative use of an assigned site under 310 Code Mass. Regs. §16.21. The plaintiffs’ argument that the title of 310 Code Mass. Regs. §16.21(3)(a), “Recycling, Composting or other Processing” should not govern where the term “other processing” is not delineated in the text of the statute, is tenuous and certainly does not rise to the level of arbitrary, capricious, or an error of law requiring reversal. G.L.c. 30A, §14. In addition to the fact that the Board’s 1989 name change grants authorization for use of the site-assigned area for processing, it is reasonably clear that processing is an accepted alternative activity under 310 Code Mass. Regs. §16.21(3)(a). Further evidence of the permissibility of the use of the site-assigned area for processing can also be found in the Board’s 1999 Modification, which contemplates recycling and processing activities. (A.R. 1115-16.) Finally, as discussed above, the plaintiffs may not collaterally attack the Board’s prior decisions in this chapter 30A appeal. The Board’s decision is therefore affirmed as the Processing Facility is site-assigned both as to acreage and use.
VII. Incineration
The plaintiffs’ claim that the Board’s Decision illegally expanded the use of the site-assigned land to permit incineration finds little support in the record as the Decision does not contemplate disposal by incineration. The plaintiffs’ contention is based on the definition of the word “disposal” as “the final dumping, land filling, or placement of solid waste into or on any land or water or the incineration of solid waste” (em *363 phasis added). 310 Code Mass. Regs. §16.02. In so arguing, the plaintiffs fail to mention that “Disposal Facility means any solid waste combustion facility rated by the Department at more than one ton per hour or any landfill’ (emphasis added). 310 Code Mass. Regs. §16.02. In this appeal, the court is evaluating a landfill, defined as “a facility or part of a facility established in accordance with a valid site assignment for the disposal of solid waste into or on land.” 310 Code Mass. Regs. §16.02.
Section V of the Board’s Decision analyzes the site suitability criteria under the rubric of a “landfill,” tracking the site suitability criteria for landfill facilities. 310 Code Mass. Regs. §16.40(3)(a). The Board then goes on to evaluate the twelve subsections of 310 Code Mass. Regs. §16.40(4), “General Site Suitability Criteria.” Nowhere in the sixteen subsections of 310 Code Mass. Regs. §16.40(3)(a), or the twelve subsections of 310 Code Mass. Regs. §16.40(4), is incineration contemplated or evaluated. Neither does the Board consider the separate regulatory section titled, “Criteria for Solid Waste Combustion Facilities,” which delineates the criteria for evaluation of incineration. 310 Code Mass. Regs. §16.40(3)(c). The Board did not evaluate the facility for incineration nor did its decision authorize disposal by incineration. Therefore, this argument must also fail as the Board’s decision does not implicitly or explicitly expand the use of the site assignment to include incineration
VIII. Leachate
The plaintiffs argue that the Board’s Decision with regard to leachate was not supported by the record, lacked substantial evidence, and was therefore arbitrary and capricious. For the following reasons the court concludes that the Decision regarding leachate was supported by substantial evidence and warranted by the record.
Leachate is defined as “a liquid that has passed through or emerged from solid waste and which may contain soluble or suspended material from such waste.” 310 Code Mass. Regs. §19.006. In evaluating the specific site suitability criteria found in 310 Code Mass. Regs. § 16.40(3), the Board considered the Landfill Facility’s numerous potential effects on the local water supply. (A.R. 3585-92.) Leachate was explicitly evaluated in the sections that contemplated 310 Code Mass. Regs. §§16.40(3)(a)(13), (14), and (16). There, the Board issued determinations, based on the evidence and the testimony, that the Landfill Facility met the criteria of the regulations. The Board noted that “the minor modification does not revise the already approved limits of the Existing Site Assignment or the Landfill Facility, including the leachate containment structures.” (A.R. 3590.) In addition to the expert testimony, the Board considered the design of the Landfill’s double-composite liners and leachate collection and storm water controls, and found them to be state-of-the-art and in compliance with state and federal regulatory requirements. (A.R. 3592.)
Finally, giving due consideration to the protection of health, safety and the environment, and mindful of the potential for failure in the Landfill’s monitoring and preventative measures, the Board imposed sixteen conditions on SRDP to control potential leachate hazards. Included in the numerous conditions were the following requirements: a prohibition on discharging leachate into the sewer system; notification in case of failure of the leachate collection system; a ban on hazardous waste; a storm water runoff collection system; reporting and development for monitoring wells; and sampling of underdrain. (A.R. 3610-23.)
The Decision regarding leachate is affirmed, as it is neither arbitrary nor capricious and is amply supported by reasonable evidence adequate to justify the Board’s conclusions. Although there is evidence to support the plaintiffs’ position, the record does not point to an overwhelming probability contrary to the Board’s conclusions, and the Decision must therefore stand. See Pyfrom, 39 Mass.App.Ct. at 625.
IX. Excluded Testimony
The plaintiffs claim that the Decision was made upon unlawful procedure and should be remanded to the Board of Health because the Hearing Officer did not allow an extra day of testimony to accommodate the plaintiffs’ expert witness, Peter Anderson. The plaintiffs’ argument on this point fails procedurally due to their lack of standing, as Ten-Citizen Groups, to raise this issue, which does not address public health, safety or damage to the environment. G.L.c. 30A, §10A. 310 Code Mass. Regs. §16.20(9)(a)(2). This claim is also substantively deficient, as the Hearing Officer’s actions with regard to Mr. Anderson’s testimony were well within her regulatory authority under 310 Code Mass. Regs. §§16.20(10)(f)(3) and 16.20(1 l)(d).
The plaintiffs correctly point out that the Hearing Officer has an obligation to make sure that all parties have an opportunity to present their claims, witnesses and evidence. 310 Code Mass. Regs. §16.20(1 l)(c)(5). The Hearing Officer has the power to determine what testimony is appropriate, and when and in what manner it shall be received. 310 Code Mass. Regs. §16.20(10)(f)(3). The Hearing Officer is further empowered to limit, exclude or strike testimony. Id. In addition, the Hearing Officer is endowed with the duties and powers contained in 310 Code Mass. Regs. §§16.20(1 l)(c) & (d). Those duties include: opening and closing the hearing; establishing the order of the proceedings; ensuring reliable and relevant testimony; and limiting or excluding evidence. 310 Code Mass. Regs. §16.20(1 l)(c). The applicable powers include the ability to “regulate the presentation of the evidence and the participation of the Parties or their representative or the participation of other persons for the purpose of ensuring that the public hearing is con- *364 eluded in a timely manner.” 310 Code Mass. Regs. §16.20(1 l)(d)(3). As to what constitutes a “timely manner,” G.L.c. Ill, §150A is instructive. “Within forty-five days of the initial date of such hearing, the board of health shall render its decision on whether to assign a site for a facility . . .” G.L.c. Ill, §150A.
In this case, the Hearing Officer allowed an extension of the forty-five-day time limit prescribed by statute (A.R. 3148-52), and a decision was not issued until June 9, 2008, seventy-five days after the start of hearings. Finding an extension necessary to the Board’s mandate of making a decision based on relevant information after a full and fair hearing, the Hearing Officer ordered that “ [i] f it takes longer than 45 days from the commencement of the hearing to complete the hearing and render a decision then, as long as the Board is continuing to conduct [the] hearings in an efficient manner, and the extension request is not an attempt to delay the proceedings,” an extension can be allowed. (A.R. 3149-50.)
The exclusion of Mr. Anderson’s testimony, far from being improper, was authorized and appropriate under the circumstances. The record shows that over the course of the proceedings the Hearing Officer duly considered numerous requests for accommodations. (A.R. 3098-3104; A.R. 3125; A.R. 3133; 3148-52; A.R. 3162-67; A.R. 3206-09; A.R. 3244-49.) It is well within the Hearing Officer’s discretion to disallow the testimony of a witness unavailable for cross-examination. 310 Code Mass. Regs. §16.20(10)(f)(3). Mr. Anderson, unfortunately, was chronically unavailable. The Hearing Officer, mindful of the parties’ right to present their case, allowed the parties to stipulate to the testimony of Mr. Anderson, but they could not agree. (A.R. 3247.) Requests for testimony via teleconference were properly denied. (A.R. 3247.) It was the duty of the Hearing Officer to regulate the presentation of Mr. Anderson’s testimony so that these lengthy proceedings could come to a conclusion allowing the Board to render a written decision. 310 Code Mass. Regs. §§16.20(1 l)(c) & (d). Therefore, the Decision was not made upon unlawful procedure, but rather was in accordance with G.L.c. Ill, §§150A, 150A 1/2, and the regulations promulgated thereunder, 310 Code Mass. Regs. §16.00 et seq.
ORDER
For the foregoing reasons, it is hereby ordered that the plaintiffs’ motion for judgment on the pleadings be DENIED.

That decision was also appealed to the Superior Court and the matter was settled pursuant to an Agreement for Judgment dated June 21, 2000. Worcester Superior Court, Civil Docket No. WOCV-1999-00895-A.

SRDP requested the following modifications to the Existing Site Assignment:
1. “Reallocate up to 224,640 tons per year (“tpy”) of waste from the Processing Facility to the Landfill, thereby increasing the volume of waste received at the Landfill and decreasing by a corresponding volume the waste received at the Processing Facility . . . Limit the Landfill Facility disposal rate to a maximum of 405,600 tpy and 1,500 tpd (average), with a daily maximum of 2,000 tpd”
2. “Allow the Landfill to accept any combination of residues from the Processing Facility and municipal solid waste (“MSW”) without regard to the geographic origin. For this request, MSW includes C&D . . .”
(A.R. 4.)

The Board actually began holding hearings on January 24, 2008, but, due to a failure to give notice to the Town of Sturbridge, an abutter, the hearings were abandoned and SRDP had to re-submit their application. The transcripts from those hearings (01/24/08, 01/29/08, 01/31/08, 02/05/08, 02/07/08, and 02/07/08) were appended to the subsequent proceedings as pre-filed testimony. (A.R. 53-328.)

“A local board of health shall assign a place requested by an applicant as a site for a new facility or the expansion of an existing facility unless it makes a finding, based on the siting criteria established by said section one hundred and fifty A 1 /2, that the siting thereof would constitute a danger to the public health or safety or the environment.” G.L.c. Ill, §150A.

The appropriate mechanism for a collateral attack on the jurisdiction of the Board would be a separate declaratory judgment action. See G.L.c. 231A, §2.

The Landfill may kill up to 200 birds per year, but its permit, issued under the United States Fish and Wildlife Department guidelines, is for gulls only. (A.R. 548.)

“(2) Major Modifications to Site Assignments at the Request of the Facility Owner or Operator. Modifications deemed to be ’’Major Modifications" include: modifications required to “Expand a Site”; vertical expansions beyond the limits of an approved plan; modifications as specified at 310 C.M.R. 16.21(1) and 16.21(3), Alternative Use of An Assigned Site; or any request to waive any site assignment criterion set forth at 310 C.M.R. 16.40(3) as it applies to the existing facility. A major modification shall require submittal of a new site assignment application that addresses all criteria affected by the modification, as determined by the Department in writing, and shall be reviewed in accordance with the requirements established at 310 C.M.R. 16.08 through 16.20."
(3) Minor Modifications to Site Assignments at the Request of the Facility Owner or Operator. Any request to modify a site assignment that is not subject to 310 C.M.R. 16.22(1) or (2), including any request to modify conditions established by the Board of Health in the site assignment, or to increase daily or annual tonnage limits, except as specified at 310 C.M.R. 16.22(4), are deemed to be “Minor Modifications.” The Board of Health may modify a site assignment to address a minor modification, at the request of the facility owner or operator, without requiring the filing of a new application by the applicant or site suitability report by the Department, provided the Board of Health provides public notice and holds a public hearing in accordance with the requirements of 310 C.M.R. 16.00 prior to deciding on the minor modification.
310 Code Mass. Regs. §16.22.