## Theresa Morales's Case.

No. 06-P-1154.

Suffolk. April 10, 2007. - June 25, 2007.

Present: Lenk, Mills, & Grainger, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board, Interest, Reimbursement of insurer. *Governmental Immunity.*

The Department of Industrial Accidents reviewing board properly awarded an employer's insurer interest on amounts that the Workers' Compensation Trust Fund had reimbursed that insurer under G. L. c. 152, § 37, for benefits paid to an employee who was disabled when her pre-existing back injury was exacerbated in the course of her employment, where G. L. c. 152, § 50, entitled the insurer to such interest. [426-428]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Kenneth W. Salinger,* Assistant Attorney General, for Workers' Compensation Trust Fund.

*Jerry E. Benezra (W. F. Uehlein* with him) for the insurer.

Grainger, J. The Workers' Compensation Trust Fund (fund)[1] appeals a decision of the Department of Industrial Accidents reviewing board (board) awarding interest to the CNA Insurance Company (CNA) on a so-called second injury reimbursement. Disputed by the parties are concepts of sovereign immunity, the deference to which the board's decision is entitled and, not least, the meaning of, and relationship between, the basic terms "payment" and "reimbursement" as they appear in G. L. c. 152.

1. *Factual background.* The facts are easily summarized and

---

[1]The fund, established pursuant to G. L. c. 152, § 65, is a special revenue fund created to provide workers' compensation benefits to employees in cases where employers have failed to obtain insurance in violation of c. 152, and to provide reimbursement to insurers in specified instances including, relevant here, when the impairment is in part a result of a previous physical impairment aggravated by a workplace injury. G. L. c. 152, § 37. See note 2, *infra.*

not in dispute. Theresa Morales sustained an injury to her lower back on December 15, 1990, while working at the Lutheran Home of Brockton (Lutheran Home). She had previously injured her back in 1971 while employed elsewhere. Morales was hospitalized in 1971 and diagnosed with herniated discs, and she ultimately underwent a surgical discectomy and spinal fusion. In July, 1993, Morales was diagnosed as suffering from failed back syndrome with spinal pathology related to her previous disc surgery, and from lower back pain exacerbated by the more recent work-related injury at the Lutheran Home. CNA, the Lutheran Home's workers' compensation insurer, paid Morales temporary total incapacity benefits under G. L. c. 152, § 34, paid for medical treatment under § 30, and ultimately paid a lump-sum settlement in the amount of $45,000.

CNA subsequently sought, and received, partial reimbursement of the benefits it paid to Morales from the fund under G. L. c. 152, § 37.[2] The parties dispute neither CNA's entitlement to reimbursement, nor the amount of reimbursement paid. The issue before us relates only to the application to this case of the provisions of G. L. c. 152, § 50, which requires interest in specified circumstances.[3]

*Proceedings below.* On July 24, 2003, an administrative judge

[2]General Laws c. 152, § 37, provides that an insurer may obtain partial compensation from the fund for payments made to qualifying employees. To qualify for reimbursement under § 37, payments must be made to an employee with a known physical impairment who suffers a subsequent injury that results in a disability that is "substantially greater by reason of the combined effects of such impairment and subsequent personal injury than that disability which would have resulted from the subsequent personal injury alone." *Oakes's Case*, 67 Mass. App. Ct. 81, 82-83 (2006), further appellate review granted, 448 Mass. 1105 (2007), quoting from G. L. c. 152, § 37, as appearing in by St. 1991, c. 398, § 71. Reimbursements are not to exceed seventy-five percent of the total payments made to the employee, and no reimbursement is made for payments in the first two years (104 weeks) of disability. The purpose is to encourage employers to hire previously injured employees by reimbursing a portion of the increased compensation burden incurred when such an employee suffers further work-related injury. See *Daly* v. *Commonwealth*, 29 Mass. App. Ct. 100, 101-102 (1990).

[3]General Laws c. 152, § 50, as appearing in St. 1991, c. 398, § 77, provides in pertinent part: "Whenever payments of any kind are not made within sixty days of being claimed by an employee, dependent or other party, and an order or decision requires that such payments be made, interest at the rate of ten percent per annum of all sums due from the date of receipt of the notice of the

considered CNA's claim pursuant to G. L. c. 152, § 10A, and ordered the fund to reimburse CNA for all benefits paid to Morales through March 18, 2003, and for seventy-five percent of any benefits paid thereafter. The fund appealed pursuant to G. L. c. 152, § 10A(3). On June 30, 2004, a de novo hearing was held by the same administrative judge, who awarded CNA the same amount of reimbursement as previously ordered but denied CNA's further claim for interest on the reimbursement amounts.

CNA appealed the denial of its claim for interest to the board. On June 20, 2006, the board overruled its prior decision in *Carmilia* v. *General Elec.*, 15 Mass. Workers' Comp. Rep. 261, 271-275 (2001).[4] The board concluded that under G. L. c. 152, § 50, CNA was entitled to interest on the second injury reimbursement awarded to it, and that the Legislature has waived the Commonwealth's sovereign immunity with respect to the recovery of such interest. The fund filed a timely notice of appeal from the decision and order issued by the board.

*Discussion.* The fund claims that the Legislature has not waived sovereign immunity. Its argument turns on the assertion that the words "payment" and "reimbursement" as used by the Legislature in c. 152 are terms of art, and that the common overlapping meaning of these terms[5] must defer to the clearly enunciated purpose of the statute, which is to use them to refer to entirely separate and distinct acts. As a consequence, the fund concludes, the requirement in § 37 of interest on "payments of any kind" does not include reimbursement made by the fund pursuant to § 37. We note that " 'we are constrained to follow' the plain language of a statute when its 'language is plain and unambiguous,' and its application would not . . . contravene the Legislature's clear intent." *Commissioner of*

---

claim by the department to the date of payment shall be required by such order or decision."

[4] In the *Carmilia* decision, the board had determined that the fund is an instrumentality of the Commonwealth, and thus is protected by sovereign immunity, and that interest does not accrue on reimbursement claims against the fund because the Legislature had not waived sovereign immunity explicitly or implicitly with respect to such interest.

[5] Black's Law Dictionary 1312 (8th ed. 2004) defines "reimbursement" as "repayment." Merriam-Webster's Collegiate Dictionary 1049 (11th ed. 2005) defines "reimburse" as "repay."

*Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999), quoting from *White* v. *Boston*, 428 Mass. 250, 253 (1998). In support of its approach the fund refers to the use of these terms in numerous sections of c. 152.[6]

A review of c. 152, including those sections cited by the fund, does not support the fund's interpretation. In every section cited, the terms are used consistently with their "ordinary lexical meaning," *Surrey* v. *Lumbermans Mut. Cas. Co.*, 384 Mass. 171, 176 (1981), which controls "[a]bsent explicit legislative" instruction to the contrary. *Ibid.* "The general and familiar rule is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Walker's Case*, 443 Mass. 157, 160 (2004), quoting from *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). Consistent with the meaning of reimbursement as a repayment, G. L. c. 152, § 34B(*c*), as appearing in St. 1991, c. 398, § 61, speaks of benefits "paid by the insurer" who "shall be entitled to . . . reimbursements," and in G. L. c. 152, § 26, second par., added by St. 1991, c. 398, § 40, to "compensation that . . . shall be paid by the insurer . . . provided, however, that . . . the insurer . . . shall be reimbursed."

In at least one section of c. 152 the Legislature has used the terms interchangeably and thus made its use of the common meaning explicit: § 37A, as amended through St. 1973, c. 855, § 3, provides that under specified circumstances, compensation to disabled war veterans "shall be paid by the insurer," who, as elsewhere in the chapter, "*shall be reimbursed . . . by the state treasurer from the fund. . . .* In the event that said fund becomes exhausted, *the state treasurer shall make such payments* from the general fund . . . ." (emphases added). The Legislature, consistent with common meaning, has employed

---

[6]Specifically, the fund cites the use of the word "payment" in G. L. c. 152, §§ 7(1), 10B(4), 15, 17, 21 and 22, the use of the word "reimbursement" in §§ 34B(*c*) and 46A, and the use of both terms, as well as the words "reimbursed" and "repaid," in §§ 15, 26, second par., 37A and 65.

the term "reimbursement" to describe a "payment" made to replace funds that have been previously expended. Contrary to the argument advanced by the fund, "reimbursement" has not been redefined in c. 152 to refer to an activity wholly distinct from "payment."

Because we conclude the board's decision was correct as a matter of law and affirm that decision, we need not address the degree of deference to which it is entitled under these circumstances. Similarly, we do not address the fund's entitlement to sovereign immunity, because the statute's clear meaning is sufficient to impose liability, and thereby to waive any immunity that might otherwise apply in this case.

*So ordered.*