# ARLINGTON CONTRIBUTORY RETIREMENT BOARD *VS.* CONTRIBUTORY RETIREMENT APPEAL BOARD & others.[1]

No. 08-P-1491.

Suffolk. April 14, 2009. - October 16, 2009.

Present: COHEN, KATZMANN, & GRAINGER, JJ.

*Administrative Law. Retirement. Contributory Retirement Appeal Board. Public Employment,* Retirement. *Public Employee Retirement Administration Commission. School and School Committee,* Retirement benefits. *Pension. Municipal Corporations,* Pensions, Retirement board.

A Superior Court judge properly upheld a decision of the Contributory Retirement Appeal Board (CRAB), denying a claim by the plaintiff, a local retirement board (board), that the board was not required by G. L. c. 32, § 3(8)(*c*), to share the costs of pensions payable to employees of a certain school district (district), where the Legislature intended, pursuant to chapter 364 of the Acts of 1983 (the Act), that G. L. c. 32, § 3(8)(*c*), would apply to and include the retirement system for the district [442-443]; and where CRAB's determination that the board was liable for a proportionate share of the pension payments to members of the district's retirement system who were formerly members of a local retirement system overseen by the board was reasonable and consistent with the purpose of the Act [443-445].

CIVIL ACTION commenced in the Superior Court Department on August 29, 2007.

The case was heard by *Patrick F. Brady,* J., on motions for judgment on the pleadings.

*Thomas Paul Gorman* for the plaintiff.

*David R. Marks,* Assistant Attorney General, for Contributory Retirement Appeal Board & another.

*Melissa C. Allison* for Minuteman Regional Vocational Technical School District Retirement Board.

KATZMANN, J. This appeal follows a series of determinations

---

[1]Public Employee Retirement Administration Commission and Minuteman Regional Vocational Technical School District Retirement Board.

made against the Arlington contributory retirement board (board) regarding the interpretation and application of G. L. c. 32, § 3(8)(c).[2] The board appeals from a judgment of the Superior Court upholding the denial by the Contributory Retirement Appeal Board (CRAB) of the board's claim that it was not required to share the costs of pensions payable to employees of the Minuteman Regional Vocational Technical School District (Minuteman district). We affirm.

*Background.* There is no factual dispute before us. The sole issue on appeal is the application of G. L. c. 32, § 3(8)(c).

In or about 1973, pursuant to G. L. c. 32, § 28(4)(a), the Minuteman district voted to accept the provisions of c. 32, §§ 1-28, and to establish a contributory retirement system for its employees. On January 18, 1973, the department of banking and insurance in the Division of Insurance issued a certificate establishing such retirement system, effective July 1, 1973, as part of the Arlington retirement system.[3] At all times from 1973 to 1983, the Minuteman district's employees were treated as employees of the school district, not as employees of the town.

The board manages the Arlington retirement system, which, at all pertinent times, also provided retirement benefits to employees of the town of Arlington and the Arlington housing authority. In accordance with the "pay-as-you-go" system then in effect, the Division of Insurance annually notified the board of the total amount to be appropriated for the system's pension fund during

---

[2]General Laws c. 32, § 3(8)(c), as amended by St. 1960, c. 571, states, in pertinent part:

> "Whenever any retired member or beneficiary receives a pension or survivor's allowance from a system pertaining to one governmental unit in a case where a portion of such pension or survivor's allowance is attributable to service in a second governmental unit to which another system pertains, the first governmental unit shall be reimbursed in full, in accordance with the provisions of this paragraph, by the second governmental unit for such portion of the pension as shall be computed by the actuary."

[3]See G. L. c. 32, § 28(4)(b) ("On and after the date when sections one to twenty-eight inclusive become operative for the employees of any district . . . the eligible employees of such district shall become members . . . of the system of the largest of such cities or towns which maintains a system if the district lies within more than one city or town . . . in the same manner as if such a system were established in such district").

each fiscal year, and the proportional share (as determined by percent of payroll) to be appropriated by the town, the housing authority, and the Minuteman district, in accordance with G. L. c. 32, § 22(7)(*c*). In order to facilitate this process, the Minuteman district treasurer would provide information to the board on the annual rate of compensation for each of the Minuteman district employees who were members of the Arlington retirement system. From 1973 to 1983, the amount appropriated by the Minuteman district for the Arlington retirement system was $717,739. During that time, only one Minuteman district employee retired and drew a pension under the Arlington retirement system.

On September 12, 1983, chapter 364 of the Acts of 1983 (the Act) established the Minuteman Regional Vocational Technical School District employees' retirement system (Minuteman retirement system) as an independent retirement system for persons employed by the Minuteman district as of January 1, 1983. See § 20 of the Act.[4] Pursuant to the Act, the annuity account of each member of the newly created Minuteman retirement system

---

[4]Section 20 of the Act provides:

"Each employee of the Minuteman Regional Vocational Technical School District as of January first, nineteen hundred and eighty-three and each employee of the school district thereafter shall become a member of the Minuteman Regional Vocational Technical School District employees' retirement system. . . . The Minuteman Regional Vocational Technical School District employees' retirement system shall reimburse the Arlington contributory retirement system for the school district's proportionate share of any amounts expended by the town of Arlington retirement system under the provisions of chapter thirty-two of the General Laws for retirement allowances to or on account of the school system's employees.

"Whenever a person who is a member of said Arlington retirement system on account of employment by the Minuteman Regional Vocational Technical School District shall become a member of the Minuteman Regional Vocational Technical School District employees' retirement system pursuant to this section, that employee shall be entitled to all creditable service and all rights and benefits to which he was entitled as a member of the Arlington retirement system. Within ninety days of such transfer by a member of the said Arlington retirement system, the amount of the accumulated total deductions credited to his account in the annuity savings fund of the said Arlington retirement system shall be transferred and credited to the annuity savings fund of the Minuteman Regional Vocational Technical School District employees' retirement system."

was transferred from the Arlington retirement system into the Minuteman retirement system.[5] The board was not required to repay the funds it had received from appropriations by the Minuteman district prior to creation of the Minuteman retirement system.

The issue of shared pension billing pursuant to G. L. c. 32, § 3(8)(c), was first raised by the Minuteman Regional Vocational Technical School District retirement board (Minuteman retirement board) in a letter sent to the Public Employee Retirement Administration Commission (PERAC) in March, 2004. The Minuteman retirement board requested assistance in billing the board for pension payments that had previously been made to fifteen retirees in the Minuteman system, as well as future pension payments to Minuteman retirement system members who had also previously been members of the Arlington retirement system. The board took the position that G. L. c. 32, § 3(8)(c), did not apply since Minuteman district employees had never been employed by the town of Arlington.

In March, 2005, PERAC found that, pursuant to the Act, the Minuteman school "became a new governmental unit of the [Minuteman retirement system]," and, thus, the Arlington retirement system was liable under G. L. c. 32, § 3(8)(c), for a portion of the Minuteman district employees' pension payments.[6] In September, 2006, the board appealed this decision to the Division of Administrative Law Appeals (DALA). DALA affirmed PERAC's decision in November, 2006, finding that § 3(8)(c) applies where, as here, the Minuteman district employees' "retirement allowance is based upon service in more than one retirement system." In December, 2006, the board

[5]The Act's requirement that "accumulated total deductions credited to [members'] account[s] in the annuity savings fund" of the Arlington retirement system be transferred to the Minuteman system (see note 4, *supra*) included the transfer of "regular interest" that had previously been credited to members' annuity accounts. The Act did not require transfer of any interest earned on those accounts over and above "regular interest." See G. L. c. 32, §§ 1, 22.

[6]PERAC also determined that, pursuant to § 20 of the Act (see note 4, *supra*), the Minuteman retirement system should reimburse the Arlington retirement system for the pension portion of the retirement allowance of the one Minuteman district employee who had retired before passage of the Act (and hence continued as a member of the Arlington retirement system). Neither the Minuteman retirement board nor the Arlington retirement board appealed from this ruling.

appealed DALA's decision to CRAB. In August, 2007, CRAB affirmed DALA's decision, adopting in full the findings and reasoning therein.

On August 29, 2007, the board filed suit in Superior Court against CRAB, PERAC, and the Minuteman retirement board. All parties moved for judgment on the pleadings. On August 5, 2008, a judgment entered affirming the decision of CRAB and decreeing that the board is liable to the Minuteman retirement board for "the portion of pensions paid to employees who contributed to the Arlington retirement system before the Legislature created the Minuteman retirement system." The board now appeals from the judgment of the Superior Court.

*Discussion.* On appeal, the board argues that no statutory liability for any portion of Minuteman district employees' pension payments can be imposed upon the Arlington retirement system based on G. L. c. 32, § 3(8)(*c*), or the Act.

1. *Standard of review.* Appellate review under G. L. c. 30A, § 14, is limited to determining whether the agency's decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law. See *Retirement Bd. of Brookline* v. *Contributory Retirement Appeal Bd.*, 33 Mass. App. Ct. 478, 480 (1992); *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. 862, 864 (2001). In reviewing CRAB's decision, we are required to "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." *Flint* v. *Commissioner of Pub. Welfare*, 412 Mass. 416, 420 (1992). While we review legal questions de novo, "[w]here an agency's interpretation of a statute is reasonable, the court should not supplant it with its own judgment." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 82 (2004). *Foresta* v. *Contributory Retirement Appeal Bd.*, 453 Mass. 669, 676 (2009). All rational presumptions must be applied in favor of the agency's action. See *Thomas* v. *Commissioner of the Div. of Med. Assistance*, 425 Mass. 738, 746 (1997); *Evans* v. *Contributory Retirement Appeal Bd.*, 46 Mass. App. Ct. 229, 233 (1999), citing *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 n.10 (1996) ("In the notoriously difficult, sometimes tortuous, field of retirement rights . . . there is particular reason for giving deference to the agency's expertness").

*2. Pension liability under G. L. c. 32, § 3(8)(c).* In interpreting a statute, the administrative agency and the reviewing court must consider the entire statutory scheme by looking to the language of the statute as a whole. Even if the statutory language is imperfect, it must be interpreted according to the Legislature's intent, ascertained from all of its words in view of the main object to be accomplished. See, e.g., *Commonwealth* v. *De-Bella,* 442 Mass. 683, 687 (2004); *Harvard Crimson, Inc.* v. *President & Fellows of Harvard College,* 445 Mass. 745, 749 (2006) ("A fundamental principle of statutory interpretation 'is that a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.' *Hanlon* v. *Rollins,* 286 Mass. 444, 447 [1934]. See *Sullivan* v. *Brookline,* 435 Mass. 353, 360 [2001]. Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound reason and common sense. See *Champigny* v. *Commonwealth,* 422 Mass. 249, 251 [1996]; *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n,* 394 Mass. 233, 240 [1985]; *Tilton* v. *Haverhill,* 311 Mass. 572, 577-578 [1942]"). See also *Ropes & Gray LLP* v. *Jalbert,* 454 Mass. 407, 412 (2009).

"By enactment of [G. L. c. 32, § 3(8)(*c*)], the Legislature has enabled governmental units that approve and pay pensions based on creditable service to units other than the paying unit to spread some of the cost of the pension to those other units. . . . [U]nits that the claimant served, other than the paying unit, must reimburse the paying unit for its proportionate share of the pension." *Lexington* v. *Bedford,* 378 Mass. 562, 572 (1979).

The board argues that G. L. c. 32, § 3(8)(*c*), does not apply because the Act did not specifically direct Arlington to pay a portion of Minuteman employees' pensions. We disagree. There is no evidence of legislative intent to exclude Arlington from shared liability for the Minuteman pensions. In fact, the Act is written to ensure that G. L. c. 32, §§ 1-28, apply to and include

the Minuteman district. See, e.g., §§ 1-4 of the Act, amending the definitions of "employee," "member," "political subdivision," and "system," respectively, to explicitly include the Minuteman retirement system and employees of the Minuteman district in G. L. c. 32, §§ 1-28. Moreover, when the Legislature intended to exclude the Minuteman retirement system from the provisions of c. 32, §§ 1-28, it did so explicitly. See, e.g., G. L. c. 32, § 7(4)(*b*), as amended through § 6 of the Act ("This subdivision shall not be applicable to . . . the Minuteman Regional Vocational Technical School District employees' retirement system"). It thus makes little sense to conclude that the Legislature, sub silentio, excluded § 8(3)(*c*) of G. L. c. 32 from application to the newly created Minuteman retirement system.

The board further argues that since G. L. c. 32, § 3(8)(*c*), addresses a situation in which more than one governmental unit is involved, the statute cannot apply to the situation here, where the Minuteman district employees were at all times employed by the Minuteman school district, and not by the town of Arlington. The board contends that since the town of Arlington never enjoyed the benefit of employment service from the Minuteman district employees, Arlington's retirement system should not be liable for any portion of the Minuteman district employees' pensions.

CRAB determined that, "[a]lthough it is true that Minuteman [district] employees were always Minuteman [district] employees, the fact remains that until 1983, they were members of, and contributed to, the Arlington retirement system[,]" and construed c. 32, § 3(8)(*c*), to mean that, "[i]n instances where a member's retirement allowance is based upon service in more than one retirement system, the system paying the retirement allowance will be reimbursed by the other system or systems for the portion of the allowance attributable to creditable service in another system (citation omitted)." CRAB thereby agreed with PERAC's view that when the Minuteman retirement system was established in 1983, the Minuteman district, for purposes of § 3(8)(*c*), became, in effect, a second governmental unit to which the new (Minuteman) retirement system pertained.

We conclude that CRAB's determination that the board should be liable for a proportionate share of the pension payments to Minuteman retirement system members who were formerly

members of the Arlington retirement system is reasonable. While it is true that the town of Arlington never enjoyed the benefit of employment service from Minuteman district employees, the Arlington retirement system did receive the benefit of Minuteman employees' participation in the Arlington retirement system: under the "pay-as-you-go" method, annual appropriations from the Minuteman district (together with appropriations from the town of Arlington and the Arlington housing authority) were used to pay the pension benefits of retired Arlington employees. Additionally, the board had access to income from the investment of funds deducted in the regular course from Minuteman district employee paychecks, which could be used to pay Arlington retirement system expenses. See G. L. c. 32, § 22. PERAC and CRAB have construed the Act and G. L. c. 32, § 3(8)(c), in harmony, to create a series of reciprocal obligations between the Arlington and Minuteman retirement systems: Minuteman employees' annuity accounts, including "regular interest," moved with them from Arlington to the Minuteman retirement system (see note 5, *supra*); Arlington was not required to repay Minuteman any additional interest earnings on those accounts (*ibid.*); nor was Arlington required to repay Minuteman the roughly $700,000 in appropriations it received prior to 1983, which, in all but one instance, was spent on retirement allowances for Arlington employees. The Minuteman retirement system was required to pay Arlington for the pension of the Minuteman employee who remained in the Arlington retirement system (see note 6, *supra*), and Arlington, in turn, was required to pay Minuteman for its proportionate share of pension payments to Minuteman employees who moved into the Minuteman retirement system.

The agency's application of § 3(8)(c) here is thus consistent with one of the purposes of the Act, to establish a dedicated retirement system for Minuteman district employees that is subject to the same rules and guidelines as those governing other local retirement systems. See *Lexington* v. *Bedford*, 378 Mass. at 574 ("the mischief that the Legislature sought to remedy by adding [§ 8(3)(c)] was the imposition on paying units of the

burden of bearing the entire cost of a pension when the pension was based on creditable service elsewhere").[7]

*Judgment affirmed.*

[7]It is also noteworthy that "[a] literal construction of statutory language will not be adopted when such a construction will lead to an absurd and unreasonable conclusion and the language to be construed 'is fairly susceptible to a construction that would lead to a logical and sensible result.' *Bell* v. *Treasurer of Cambridge,* 310 Mass. 484, 489 (1941), and cases cited. Moreover, a literal construction will not be adopted when that construction would be inconsistent with other material provisions of the statute and would defeat the aim and object of the legislation. *Cullen* v. *Mayor of Newton,* 308 Mass. 578, 583-584 (1941). *Frye* v. *School Comm. of Leicester,* 300 Mass. 537, 538 (1938)." *Lexington* v. *Bedford,* 378 Mass. at 570. See *Roberts* v. *Enterprise Rent-A-Car Co. of Boston, Inc.,* 438 Mass. 187, 194 (2002), *S.C.,* 445 Mass. 811 (2006).