Adams *v.* City of Boston.

DANIEL ADAMS *vs.* CITY OF BOSTON
(and two consolidated cases[1]).

Suffolk. November 8, 2011. - March 7, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Police,* Career incentive pay. *Municipal Corporations,* Collective bargaining, Police. *Contract,* Collective bargaining contract. *Statute,* Appropriation of money, Construction.

This court concluded that G. L. c. 41, § 108L, a local option statute establishing a career incentive pay program for police officers, through a system of shared funding with the Commonwealth, requires only that municipalities pay one-half the amounts specified in the payment provision, plus any amount actually received from the Commonwealth; thus, where the terms in collective bargaining agreements between a municipality and police unions provided that, in the event of a deficient reimbursement from the Commonwealth, the municipality owes only its one-half share plus the amount actually reimbursed, the agreements did not conflict with the statute and were valid. [607-615]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 4, 2010.

The case was reported by *Cordy,* J.

*Bryan C. Decker* (*Leah M. Barrault* with him) for Daniel Adams & others.

*Kay H. Hodge* (*John M. Simon* with her) for city of Boston.

The following submitted briefs for amici curiae:

*William J. Johnson,* of Virginia, & *Timothy R. King* for Massachusetts Coalition of Police, IUPA, AFL-CIO, & another.

*Philip G. Boyle, Laurence J. Donoghue, Peter J. Mee,* & *Colin R. Boyle* for City Solicitors and Town Counsel Association.

*Philip Collins* for Massachusetts Municipal Association.

SPINA, J. In this consolidated appeal, we construe the payment obligations of municipalities participating in G. L. c. 41,

[1]Francis Armstrong *vs.* City of Boston and Brian Albert *vs.* City of Boston.

§ 108L, popularly known as the "Quinn Bill," a local option statute establishing a career incentive pay program for police officers. The statute provides that in participating municipalities, qualifying police officers "shall be granted" certain salary increases for furthering their education in the field of police work. *Id.* The statute also provides that municipalities "shall be reimbursed" by the Commonwealth for fifty per cent of payments made under the program. *Id.* The underlying cases arose when the Commonwealth, facing budgetary constraints, substantially cut § 108L reimbursements. The Commonwealth legally was permitted to do so because § 108L reimbursements are considered subject to appropriation by the General Court. *Milton* v. *Commonwealth*, 416 Mass. 471, 473-475 (1993). Faced with a deficient reimbursement from the Commonwealth, the city of Boston (city) in turn informed police union leaders that it would cut payments almost in half.[2] The city took this action pursuant to clauses in collective bargaining agreements (CBAs) it had reached with the unions regarding the city's participation in the program.[3] The clauses state that, should the Commonwealth ever fail to reimburse the city its half share, the city will only owe its own half share, plus any amount actually received from the Commonwealth. The plaintiffs now contend that these clauses impermissibly conflict with the statute, which they view as requiring the city to pay one hundred per cent of benefits irrespective of reimbursement.

The plaintiff police officers, who qualify for § 108L benefits, brought three separate suits in the Superior Court seeking (1) a declaration that the CBA provisions conflict with § 108L and are thus invalid, and (2) an order that the city "make full payment." The parties jointly petitioned to consolidate the cases

---

[2]The payments by the city would be calculated as follows: the city would cut payments so that it would pay "its half," and add to this the amount of reimbursement actually received from the Commonwealth. This latter amount was 8.73 per cent of full benefits under G. L. c. 41, § 108L. Thus, the city reduced payments to 58.73 per cent of full benefits.

[3]The collective bargaining agreements (CBAs) were between the city and the Boston Police Patrolmen's Association, for patrol officers; the Boston Police Superior Officers Federation, for sergeants, lieutenants, and captains; and the Boston Police Detectives Benevolent Society, which negotiated two separate agreements for detectives and superior detectives.

and transfer them to this court. G. L. c. 211, § 4A. A single justice in the county court granted the petition and reserved and reported the matter without decision to the full court.[4] We now conclude that judgments must enter for the city.

1. *Background.* Section 108L is a local option statute, enacted in 1970, providing incentive salary increases to police officers for furthering their education in police work. Payment and reimbursement under the statute operate as follows. Municipalities first must obtain certification by the board of higher education (board) that a particular officer is eligible for a salary increase. Once certified, the municipality then pays the salary increase over the course of a fiscal year, July 1 through June 30. The municipality then files information with the board by a specified date, listing § 108L payments made over the prior fiscal year and requesting reimbursement.

Two provisions of the current statute are at issue in this case. The first provision, which we shall call the "payment provision," was added in 1976; at the time, it served to reduce the percentage salary increases available to officers under the previous payment provision.[5] St. 1976, c. 480, § 9. See *Rooney* v. *Yarmouth*, 410 Mass. 485, 487 (1991). The payment provision lists the percentage base salary increases that officers are entitled to receive for earning various credits or degrees:

> "[A]ny regular full-time police officer commencing such incentive pay program after September 1st, 1976[,] *shall be granted* a base salary increase of ten per cent upon attaining an associate's degree in law enforcement or sixty points earned to a baccalaureate degree in law enforcement, a twenty per cent increase upon attaining a baccalaureate degree in law enforcement, and a twenty-five per cent increase upon attaining a master's degree in law

[4]We acknowledge the amicus briefs submitted by the City Solicitors and Town Counsel Association; the Massachusetts Coalition of Police, IUPA, AFL-CIO, and National Association of Police Organizations, Inc.; and the Massachusetts Municipal Association.

[5]The new payment provision applied to officers who began the program on September 1, 1976, or thereafter. St. 1976, c. 480, § 9. Officers who had begun the program prior to July 1, 1976, were entitled to salary increases at greater rates. *Id. Rooney* v. *Yarmouth*, 410 Mass. 485, 487 (1991).

enforcement or for a degree in law" (emphasis added).

G. L. c. 41, § 108L, as appearing in St. 1976, c. 480, § 9. This language has remained unchanged since the provision was added in 1976.

The second provision at issue, which we shall call the "reimbursement provision," was included in the original statute, St. 1970, c. 835. The provision reads:

> "Any city or town which accepts the provisions of this section and provides career incentive salary increases for police officers *shall be reimbursed* by the commonwealth for one half the cost of such payments upon certification by the board of higher education" (emphasis added).

G. L. c. 41, § 108L. This language appears in the paragraph before the payment provision; it has remained unchanged since 1970.[6]

a. *The* Milton *case.* In *Milton* v. *Commonwealth*, 416 Mass. 471 (1993) (*Milton*), this court had occasion to interpret the reimbursement provision of § 108L. There, the issue before the court was whether the Commonwealth could be ordered to reimburse municipalities when it failed to pay its fifty per cent share. *Id.* at 472. The case arose out of the Commonwealth's failure to appropriate sufficient sums for § 108L reimbursement for fiscal years 1988 through 1991. *Id.* The court held that the words "shall be reimbursed" do not create an absolute right to reimbursement; rather, the reimbursement provision creates only a conditional right subject to the "availability of funds appropriated [by the General Court] for the purpose." *Id.* at 473. Since our decision, therefore, municipalities and police officers have been unable to seek judicial relief against the Commonwealth for failing to reimburse § 108L payments.

b. *The collective bargaining agreements.* The city accepted the provisions of § 108L in 1998, after agreeing to do so in collective bargaining agreements with police unions.[7] The CBAs

---

[6]Statute 1976, c. 480, § 9, rewrote § 108L, replacing all of the text with new text, but retained the reimbursement provision verbatim.

[7]The CBA between the city and the Boston Patrolmen's Association states in art. XVII A, § 1, that the mayor "shall transmit to the City council an

contain certain provisions regarding the city's participation in the program. One such provision reads:[8]

> "If for any fiscal year the reimbursement from the Commonwealth does not fully meet its fifty per cent (50%) share of educational incentives paid pursuant to [§ 108L], then eligible employees shall subsequently be paid educational incentives equal to 5.0%, 10.0%, or 12.5% based on the degree held and certified, plus [the amount] actually reimbursed by the Commonwealth for the prior fiscal year."

The percentages listed — five per cent, ten per cent, and 12.5 per cent — equal one-half the percentages specified in the payment provision of § 108L. The parties therefore clearly agreed that, should the Commonwealth ever fail to reimburse the city for its full half of § 108L payments, the city could subsequently cut payments in half.

c. *The Commonwealth's reduced § 108L reimbursements.* Consistent with the statutory procedures already described, in the fall of 2009 the city timely applied to the Commonwealth for reimbursement of § 108L payments made during FY 2009. The city's payments for FY 2009 amounted to $21,719,862. The city therefore requested reimbursement of $10,859,931 — half the paid sum. The Commonwealth, however, had not appropriated sufficient money for the FY 2010 budget to cover anticipated costs for § 108L reimbursements.[9] The Commonwealth only reimbursed the city $1,896,261, equal to 8.73 per cent of the city's total § 108L expenditures for FY 2009.

On December 31, 2009, having received the Commonwealth's reimbursement, the city's director of labor relations wrote to police union leaders explaining that the city planned to reduce

order accepting the provisions of [§ 108L], and thereafter shall exert said Mayor's best efforts to procure the passage of said order . . . ."

[8]The language quoted is taken from the CBA between the city and the Boston Police Detectives Benevolent Society. The language in the other CBAs does not differ in any material respect.

[9]The budget for FY 2010 passed by the General Court included only $10 million for reimbursing all § 108L municipalities in the Commonwealth. St. 2009, c. 27, § 2, line item 8000-0040. This was well short of the estimated $55 million that was needed to pay the Commonwealth's half share.

§ 108L payments, effective almost immediately.[10] In accordance with the CBAs, the city reduced payments to 58.73 per cent, consisting of the "full fifty per cent" contribution from the city, plus the 8.73 per cent actually received from the Commonwealth. The letter informed the unions that the reductions were for a twelve-month period, but that the city would again reduce payments if the Commonwealth again failed to appropriate sufficient funds in the FY 2011 budget for § 108L reimbursements.

The Commonwealth appropriated $10 million in the FY 2011 budget for reimbursement of § 108L payments for FY 2010. The parties agree, however, that $58 million is needed to reimburse all § 108L municipalities for half of those payments.

The plaintiffs in the underlying cases seek a declaration that the CBA provisions are invalid because they materially conflict with § 108L. In their view, § 108L requires municipalities to pay one hundred per cent of the salary increases specified in the payment provision. This one hundred per cent figure is not contingent on later reimbursement from the Commonwealth, which the plaintiffs view as a separate and distinct obligation. The plaintiffs argue that because the CBA provisions allow less than one hundred per cent payment, they materially conflict with the statute and are thus invalid. See *Boston Hous. Auth.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155, 163-165 (2010) (*BHA*). In addition, § 108L is not one of the statutes listed in G. L. c. 150E, § 7 (*d*), that yield to CBAs; therefore, the CBAs must yield to the statute and be declared invalid.

2. *Discussion.* In cases involving the interplay between a statute and a CBA provision, we begin by looking to the so-called "conflicts" statute, G. L. c. 150E, § 7 (*d*). Section 7 (*d*) provides that where a CBA is contrary to certain enumerated statutes,[11] the terms of the CBA prevail over the statute. *Id.* ("If

---

[10]The cuts were to become effective during the first pay period after the city's receipt of the deficient reimbursement. The Commonwealth briefly delayed the cuts as a way of giving individual officers more time to assess the impact on "their pay and their pension calculation."

[11]The enumerated statutes, generally speaking, contain specific mandates regarding terms and conditions of employment of public employees. See G. L. c. 150E, § 7 (*d*); *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 566 (1983).

a [CBA] reached by the employer and the exclusive representative contains a conflict [with certain enumerated statutes] . . . the terms of the [CBA] shall prevail"). The section meshes with the strong public policy in the Commonwealth favoring collective bargaining between public employers and employees over certain conditions and terms of employment. See *Somerville* v. *Somerville Mun. Employees Ass'n*, 451 Mass. 493, 496 (2008).

Conversely, however, "statutes not specifically enumerated in § 7 (*d*) will prevail over contrary terms in collective bargaining agreements." *School Comm. of Natick* v. *Education Ass'n of Natick*, 423 Mass. 34, 39 (1996) (*School Comm. of Natick*), quoting *National Ass'n of Gov't Employees* v. *Commonwealth*, 419 Mass. 448, 452, cert. denied, 515 U.S. 1161 (1995). To determine if a CBA provision is contrary to a statute not listed in § 7 (*d*), we ask whether the provision materially conflicts with the statute. See *Somerville* v. *Somerville Mun. Employees Ass'n*, 80 Mass. App. Ct. 686, 688-689 (2011) (collecting cases). If it does, the CBA provision is invalid. See *BHA, supra.*

Section 108L is not one of the statutes enumerated in § 7 (*d*). The outcome of this case, therefore, depends on whether the CBA provisions materially conflict with § 108L. See *School Comm. of Natick, supra.* For reasons that follow, we conclude that they do not. The Legislature in drafting the statute intended a system of shared funding. As such, the statute in the end requires only that municipalities pay one-half the amounts listed in the payment provision, plus any amount actually received from the Commonwealth. The statute is "simply silent" as to a requirement to pay more than one-half.[12] See *Sellers's Case*, 452 Mass. 804, 810 (2008). In the face of this silence, municipalities are free to pay more than one-half voluntarily, and may agree to do so via collective bargaining, but the statute does not require it. See *Dedham* v. *Dedham Police Ass'n (Lieutenants & Sergeants)*, 46 Mass. App. Ct. 418, 420-421 (1999). In the instant cases, the city agreed in its CBAs that in the event of a deficient reimbursement from the Commonwealth, the city only

---

[12]We therefore reject the related argument of the plaintiffs that the CBA provisions attempted to "amend" § 108L. The CBA provisions merely parrot the baseline requirements of the statute; therefore, they could not "amend" the statute in any way.

owes its fifty per cent share plus the amount actually reimbursed. This language merely parrots the minimum statutory requirements. The CBAs, therefore, do not conflict with the statute and are valid.

a. *Textual analysis.* We begin our analysis in familiar territory: by reading the language of the statute. *Halebian* v. *Berv*, 457 Mass. 620, 628 (2010), quoting *Commonwealth* v. *Raposo*, 453 Mass. 739, 743 (2009). We do so in order to determine whether the intent of the Legislature is apparent from the language itself. See *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 601 (2010) (*Wheatley*). If we determine that the intent of the Legislature is unambiguously conveyed by the statutory language, we simply end our analysis and give effect to the legislative intent. See *id.*, and cases cited. In deciding whether the legislative intent is expressed unambiguously by the words used, we must take caution to give effect to all of the statute's terms, "so that no part will be inoperative or superfluous." *Connors* v. *Annino*, 460 Mass. 790, 796 (2011) (*Connors*), quoting *Wheatley, supra.*

As an initial matter, we think the text of the statute unambiguously conveys the intent of the Legislature that participating municipalities be required to pay fifty per cent of the amounts specified in the payment provision, plus any reimbursement actually received.[13] The fact that the statute is voluntary does not relieve municipalities of this requirement. Our cases interpreting local option statutes have made clear that although such a statute is accepted voluntarily, once accepted the municipality must comply with the statute's unambiguous mandates. See, e.g., *Cambridge* v. *Attorney Gen.*, 410 Mass. 165, 167-168 (1991) (municipality opting to accept provisions of G. L. c. 32B must purchase group health insurance plans for its employees, and pay certain minimum percentage of premiums). See also *Broderick* v. *Mayor of Boston*, 375 Mass. 98, 103 (1978) (*Broderick*) (rejecting notion that city was "entrap[ped]" in voluntary statute).

---

[13]The city does not seriously challenge this requirement. The reimbursement provision of § 108L states that municipalities that "provide[] career incentive salary increases" will be reimbursed half the cost of "such payments." The "payments" referred to are listed in § 108L's payment provision. Municipalities are thus clearly required to pay one-half the sums listed in the payment provision.

Nor have any amendments passed since 1970 altered the fifty per cent minimum requirement. Municipalities are bound by subsequent amendments to a local option statute; a "fresh acceptance" may be required only where a later amendment is "not germane" to the subject of the original statute. *Broderick, supra* at 102-103. The amendments to § 108L enacted since 1970 primarily have been aimed at improving the quality of classes offered under the auspices of the program.[14] No amendment has changed the language regarding half payment. Thus, no "fresh acceptance" is required, and the municipalities are bound to fifty per cent payment. See *id.*

We next ask whether the text is equally clear regarding a legislative intent that municipalities be required to pay full benefits under § 108L. We think the words "shall be granted" as used in the payment provision do not unambiguously convey such an intent. The statute states that certain specified salary increases "shall be granted" to qualifying police officers. But the statute further states that paying municipalities "shall be reimbursed" for one-half the payments. It could be that, as the plaintiffs contend, "shall be granted" means "shall be granted irrespective of reimbursement." But it could also be that "shall be granted" refers to a conditional obligation to pay subject to the Commonwealth reimbursing (paying) its half share. At the very least, then, the reimbursement provision muddies the textual waters as to whether the Legislature intended one hundred per cent payment. To conclude otherwise is to render the reimbursement provision a nullity, which we cannot do. See *Connors, supra*, quoting *Wheatley, supra.*

The plaintiffs argue that a recent decision of this court, *Boston*

---

[14]In 1975, an amendment provided that credits or degrees earned through the program must be for courses specifically leading toward a degree in law enforcement. St. 1975, c. 452, § 1. The same amendment directed the board of higher education (board) to maintain a list of approved courses leading to a degree in law enforcement. *Id.* at § 3. A 2002 amendment directed the board to establish "quality guidelines" and to certify salary increases only for credits earned at programs meeting those guidelines. St. 2002, c. 184, § 48. In 2004, an amendment established extensive procedures for educational institutions wishing to participate in the program, involving submission of an application, payment of a fee to the board, inclusion on an "approved program list," reviews and inspections by the board, and appeals of adverse determinations by the board. St. 2004, c. 149, § 93.

*Hous. Auth.* v. *National Conference of Firemen & Oilers, Local 3,* 458 Mass. 155 (2010), should control our analysis of the plain language here. In that case, we held that an "evergreen clause" in a CBA, stating that during any period of negotiations between the parties the CBA would remain in full force and effect, directly conflicted with G. L. c. 150E, § 7 (*a*), stating that CBAs "shall not exceed a term of three years." *Id.* at 157, 162. We stated that the unambiguous language of the statute revealed a clear legislative intent to limit CBAs to three years.[15] *Id.* at 162-163. The evergreen provision, which allowed the CBA to stay in effect beyond the three-year term, was invalid because it conflicted with the statute. *Id.* at 164.

Unlike the statute at issue in *BHA,* the text of § 108L does not answer clearly the question posed. The statute analyzed in *BHA,* G. L. c. 150E, § 7 (*a*), reads: "Any collective bargaining agreement reached between the employer and the exclusive representative shall not exceed a term of three years." This language, clear on its face, is not qualified by any other part of the statute. A CBA of four years would clearly conflict with the statute and be declared invalid. By contrast, the payment provision of § 108L is significantly qualified one paragraph earlier by the reimbursement provision.

b. *Legislative history.* Having found the text of the statute ambiguous, we next seek to discern the intent of the Legislature by turning to "the cause of [the statute's] enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Industrial Fin. Corp.* v. *State Tax Comm'n,* 367 Mass. 360, 364 (1975), quoting *Hanlon* v. *Rollins,* 286 Mass. 444, 447 (1934) (*Hanlon*). We employ classic rules of statutory construction to aid us in our task. See, e.g., *Halebian* v. *Berv,* 457 Mass. 620, 628-629 (2010). We first discuss the cause of the statute's enactment.

Although the history of the statute is sparse, at least two

---

[15]This reading made sense in light of certain beneficial purposes of the statute, such as allowing parties to a CBA to reassess the terms of the agreement every three years. See *Boston Hous. Auth.* v. *National Conference of Firemen & Oilers, Local 3,* 458 Mass. 155, 162-163 (2010). As discussed *infra,* the plaintiffs' theory here is at odds with at least one purpose of § 108L.

reasons for its enactment can be discerned. First, it is clear that the statute was intended "to improve the educational level of the police force through recruitment and the luring of, among others, college educated persons." *Palmer* v. *Selectmen of Marblehead*, 368 Mass. 620, 627 (1975). Second, it is equally clear that the Legislature intended to give municipalities the ability to fund incentive salary increases at twice the level they could otherwise afford, via a system of shared funding with the Commonwealth. As we have not previously had occasion to discuss this latter purpose of the statute, we now do so briefly.

Section 108L was passed during a period in the Commonwealth when there was a general concern that the police force was undereducated.[16] *Id.* at 626 n.8. To remedy the situation, Attorney General Robert H. Quinn and others advocated for, and in 1970 achieved, a Statewide local option statute providing salary incentives to police officers to take courses and pursue degrees. A hallmark of the original statute was that one-half the cost of incentives was to be borne by the Commonwealth.[17] In order to qualify for reimbursement, a participating municipality had to file certain information by September 1 of each year, at which time the board would certify both salary increases and reimbursement payments. G. L. c. 41, § 108L. That shared funding was a purpose of the statute is borne out by the reimbursement provision's inclusion in the original statute, and its

---

[16]The committee on law enforcement and the administration of justice formed by Governor John A. Volpe had reported that the "educational level of the Massachusetts policeman is among the lowest in the nation." College-Trained Officer May Earn More Pay, Boston Globe, Jan. 7, 1968, at 16. See *Palmer* v. *Selectmen of Marblehead*, 368 Mass. 620, 626 n.8 (1975). See generally *Fordyce* v. *Hanover*, 457 Mass. 248, 259-260 (2010) (using Ward Commission report as source of legislative history).

[17]A newspaper article, published two days before the bill was signed by Governor Francis W. Sargent on August 28, 1970, described this new feature: "Under the terms of the bill the state would pick up half the cost of the program, with the rest being borne by the communities." Police Urge Sargent to Sign Education-Aid Bill, Boston Globe, Aug. 26, 1970, at 28. We employ contemporaneous news accounts not as a source of legislative intent, but as a source of valuable context as to the public dialogue animating the statute's passage. For a useful discussion of the distinction, see *In re Jason W.*, 378 Md. 596, 607-611 (2003) (Harrell, J., concurring) (explaining proper uses of contemporary news accounts in discerning legislative intent).

continued, undisturbed inclusion without redaction since that time.[18]

c. *Statutory construction in light of legislative purpose.* Having discussed the statutory objectives, we now analyze the statute to determine the interpretation that best advances those objectives. See *Hanlon, supra.* These cases require us to employ the maxim that "[s]eemingly contradictory provisions of a statute must be harmonized so that the enactment as a whole can effectuate the presumed intent of the Legislature." *Wilson* v. *Commissioner of Transitional Assistance,* 441 Mass. 846, 853 (2004) (*Wilson*). The two "shalls" in the payment provision and reimbursement provision are engaged in a tug-of-war of sorts; our task is to reconcile the two, if possible, in the manner intended by the Legislature. See *id.*

The theory advanced by the plaintiffs — that the payment provision requires one hundred per cent payment — gives effect to only one provision, and to only one purpose, of the statute. Under their theory, when the Commonwealth fails to reimburse a municipality entirely, the municipality must bear one hundred per cent of the cost of the educational incentive. This may promote a better educated police force, but it ignores the reimbursement provision and the shared funding scheme. See *id.*

The plaintiffs suggest one way of reconciling the two "shalls" — that the Legislature simply meant "shall" in two different senses. They argue that "shall" was meant to be mandatory under the payment provision, but subject to appropriation under the reimbursement provision. We reject this interpretation. As stated, we strive to interpret terms in a statute as harmoniously effectuating the intent of the Legislature. See *Wilson, supra* ("Construing the word 'shall' in its directive sense as it appears in [both] provisos 2 and 8, . . . all the provisos work together

---

[18]The importance of shared funding also is reflected in the fact that before the passage of § 108L, many municipalities already had begun to offer their own salary incentives to officers for taking courses and earning degrees. See Police Urge Sargent to Sign Education-Aid Bill, Boston Globe, Aug. 26, 1970, at 28 (at time § 108L was passed, about twenty communities already provided educational incentives to police); Towns Boosting Police Professionalism, Boston Globe, Nov. 5, 1967, at 75 (describing program in Framingham). It is safe to assume that a principal advantage of § 108L was to allow these municipalities to double their existing contributions to salary incentives.

harmoniously to effectuate the legislative purpose'' [citation omitted]). "Payment" and "reimbursement" under the statute are not separate and distinct; they are the same act accomplished at different times. See *Morales's Case*, 69 Mass. App. Ct. 424, 426-428 & nn.5, 6 (2007) (terms "payment" and "reimbursement" as used in G. L. c. 152 not separate and distinct, but rather mean "payment" and "repayment"). This reading interprets both "shalls" the same way — contingent — and thereby accomplishes the legislative purpose of shared funding for incentive salary increases.

Reading both the payment and reimbursement obligations as contingent also makes sense given the mechanics of police salary payments. Municipal police receive their salaries not from the Commonwealth, but from municipalities. That the Legislature would use the differing terms "payment" and "reimbursement" instead of only "payment" is understandable because the Commonwealth does not directly "pay" officers. The reimbursement scheme is simply an administratively convenient method for the Legislature to allow the Commonwealth to provide "payment" of one-half the salary increases.

We also doubt the Legislature would have employed "shall" in two opposing senses in a two-paragraph span of the same statutory section without any explicit indication of the different meanings. See 2A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 46:6, at 249 (7th ed. 2007) ("The same words used twice in the same act are presumed to have the same meaning"). Had the Legislature intended such a result, we would have expected it to use different words in the same provision, not the same word. See *City Bank & Trust Co.* v. *Board of Bank Incorporation*, 346 Mass. 29, 31 (1963) ("The distinction between 'may' and 'shall' is not lightly to be held to have been overlooked in legislation").

Finally, we reject the notion that the plaintiffs' theory is mandated by our decision in the *Milton* case. Under that decision, the Commonwealth cannot be ordered to reimburse municipalities for § 108L payments. *Milton, supra* at 472-473. It is thus possible that, if the Commonwealth appropriates no money for the purpose, a municipality could receive no reimbursement. See *id.* But our decision said nothing of the

amount owed by municipalities in such a scenario. For the reasons discussed, § 108L only requires one-half payment by municipalities, plus payment of any reimbursement actually received. Because the statute is silent as to any further amount, a CBA that provides for fifty per cent payment or some greater amount does not conflict with the statute. See *Somerville* v. *Somerville Mun. Employees Ass'n*, 80 Mass. App. Ct. 686, 692 (2011) ("The CBA and the statute may be read harmoniously because they are designed to address different issues").

Taking the purpose of the statute into account, we conclude that § 108L requires only that municipalities pay one-half the amounts specified in the payment provision, plus any amount actually received from the Commonwealth. Municipalities may agree to pay more, but the statute does not require it. The cases are remanded to the county court, where the single justice is directed to issue a declaration stating that, with respect to G. L. c. 41, § 108L, the CBAs between the city and the various police unions are valid and enforceable.

*So ordered.*