HAVERHILL RETIREMENT SYSTEM *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & another.[1]

No. 11-P-1374.

Essex. March 12, 2012. - July 11, 2012.

Present: KANTROWITZ, MILKEY, & SULLIVAN, JJ.

*Retirement. Pension. Contributory Retirement Appeal Board. School and
School Committee, Retirement benefits. Public Employment, Retirement
benefits. Municipal Corporations, Retirement board, Pensions.*

The Contributory Retirement Appeal Board correctly concluded that where a
school employee erroneously was enrolled in a town's retirement system
rather than the Massachusetts Teachers' Retirement System, the employee's
participation in the municipal retirement system "pertained" to that system
within the meaning of G. L. c. 32, § 3(8)(c), and therefore, the municipal
retirement system was required to make a statutorily defined reimburse-
ment for the period of time it received mistaken contributions once the
employee, and his creditable service, were transferred to the State system.
[131-134]

CIVIL ACTION commenced in the Superior Court Department on
August 12, 2010.

The case was heard by *Robert A. Cornetta, J.*, on a motion
for judgment on the pleadings.

*Michael Sacco* for the plaintiff.

*Kirk G. Hanson*, Assistant Attorney General, for the defend-
ants.

SULLIVAN, J. This is an appeal arising from the erroneous
enrollment of a municipal employee in the Haverhill Retirement
System (HRS) rather than the Massachusetts Teachers' Retire-
ment System (MTRS). The issue before us is whether the HRS
may be required to make a statutorily defined reimbursement to
MTRS for the period of time it received mistaken contributions
once the employee, and his creditable service, were transferred

[1]Teachers' Retirement System.

to MTRS. This question turns on an issue of statutory construction, namely whether service "pertains" to a municipal retirement system within the meaning of G. L. c. 32, § 3(8)(*c*), as amended by St. 1987, c. 697, § 23, when an employee has been erroneously enrolled in a municipal retirement system. The Contributory Retirement Appeal Board (CRAB) answered the question in the affirmative. The Superior Court judge concurred. We affirm.

*Background.* The administrative record reveals the following undisputed facts. The city of Haverhill (city) employed Albert Rosso as a school adjustment counsellor between 1995 and 1997. During those years Rosso was enrolled as a member of the HRS. Both his "regular deductions," G. L. c. 32, § 1, inserted by St. 1945, c. 658, § 1, also known as employee contributions, see G. L. c. 32, §§ 1, 22(1)(*b*), and the city's employer contributions were paid to HRS.[2] Rosso's assignment to HRS was in error. By virtue of his position he should have been in the MTRS from the outset. In 1997 Rosso became a teacher and the contributions stopped. In 2003, the error was discovered, and Rosso's membership was transferred to MTRS. Thereafter, all of Rosso's ongoing deductions and the employer contributions were paid to MTRS.

MTRS wrote to HRS and requested that HRS transfer the accumulated total deductions that fund the annuity portion of the benefit to MTRS pursuant to G. L. c. 32, § 3(8)(*a*). In response, HRS forwarded to MTRS Rosso's accumulated total deductions in HRS. Chapter 32 does not, however, provide for the transfer of the employer contributions and related earnings for the pension portion of the benefit. Instead, G. L. c. 32, § 3(8)(*c*), as

---

[2]A public employee's pension is made up of two components. The first component is "regular deductions," G. L. c. 32, § 1, also known as "employee contributions," G. L. c. 32, § 22(1)(*b*), inserted by St. 1945, c. 658, § 1, which are deducted from employee pay. The "regular interest" on those deductions, G. L. c. 32, § 1, see G. L. c. 32, § 22(6)(*a*), (*b*), and the regular deductions comprise the employee's "accumulated total deductions." G. L. c. 32, § 1. The accumulated total deductions are then invested in an investment account. The second component is made up of the "employer contributions," see G. L. c. 32, § 22(3), which are also invested. At retirement, the employee receives a "retirement allowance" consisting of an "annuity," funded by the accumulated total deductions, and a "pension," funded by employer contributions and earnings. G. L. c. 32, § 1.

amended by St. 1960,[3] provides that, in certain circumstances, a transferor system may be required to transfer to the receiving system reimbursement for "such portion of the pension as shall be computed by the actuary." Relying on G. L. c. 32, § 3(8)(c), MTRS requested that HRS assume liability and reimburse MTRS for Rosso's pension for the twenty months Rosso was mistakenly enrolled in the HRS. HRS declined, stating that it would not assume pension liability because the contributions had been made in error, and Rosso's service therefore did not "pertain" to HRS within the meaning of the statute.

MTRS requested a determination from the Public Employee Retirement Administration Commission, which found that HRS was responsible for the liability. HRS appealed. A division of administrative law appeals (DALA) magistrate determined that HRS was obligated to assume liability for the relevant period. CRAB affirmed, and the Superior Court judge upheld the CRAB determination.

*Standard of review.* "Appellate review under G. L. c. 30A, § 14, is limited to determining whether the agency's decision was unsupported by substantial evidence, arbitrary and capricious, or otherwise based on an error of law." *Arlington Contributory Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 75 Mass. App. Ct. 437, 441 (2009) (*Arlington*). Here we are presented with a pure question of law. Although questions of law are subject to de novo review, *Rosing* v. *Teachers' Retirement Sys.*, 458 Mass. 283, 290 (2010), "[w]e typically defer to CRAB's expertise and accord ' "great weight" to [its] interpretation and application of the statutory provisions it is charged with administering.' " *MacKay* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 924, 925 (2002), quoting from *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 n.10 (1996).

*Discussion.* CRAB held that G. L. c. 32, § 3(8)(c), clearly

---

[3]This section provides in pertinent part, "Whenever any retired member . . . receives a pension . . . from a system pertaining to one governmental unit in a case where a portion of such pension . . . is attributable to service in a second governmental unit to which another system pertains, the first governmental unit shall be reimbursed in full, in accordance with the provisions of this paragraph, by the second governmental unit for such portion of the pension as shall be computed by the actuary."

mandates the transfer of the funds "[t]o protect the financial integrity of the system" and that the Legislature did not intend to permit a municipality to retain mistaken contributions while at the same time leaving another retirement system entirely responsible for the pension portion of the retirement benefit. HRS argues that because Rosso was ineligible, his service does not "pertain" to HRS.

Because the statute does not explicitly address the question of erroneous enrollment in a retirement system, we treat the statute as ambiguous and decide the case accordingly. See *Adams* v. *Boston*, 461 Mass. 602, 611 (2012). Compare *Boston Hous. Authy.* v. *National Conference of Firemen & Oilers, Local 3*, 458 Mass. 155 (2010) (G. L. c. 150E, § 7, subsequently amended by St. 2011, c. 198). CRAB's case-specific determination is entitled to "substantial deference." *Provencal* v. *Commonwealth Health Ins. Connector Authy.*, 456 Mass. 506, 514 (2010). "[A] [S]tate administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing, unless a statute unambiguously bars the agency's approach." *Zoning Bd. of Appeals of Amesbury* v. *Housing Appeals Comm.*, 457 Mass. 748, 760 (2010), quoting from *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 633 (2005) (determining authority of State housing appeal committee). As CRAB noted in its decision, "[s]tatutory silence, like statutory ambiguity, often requires that an agency give clarity to an issue necessarily implicated by the statute but either not addressed by the Legislature or delegated to the superior expertise of agency administrators." *Goldberg* v. *Board of Health of Granby*, *supra* at 634 (upholding agency regulations).

"We interpret a statute to give effect to the Legislature's intent." *Boston Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 441 Mass. 78, 83 (2004). See *Adams* v. *Boston*, 461 Mass. at 611; *Arlington*, 75 Mass. App. Ct. at 442. The purpose of G. L. c. 32, § 3(8)(*a*) and (*c*), with certain exceptions not applicable here, is to ensure that a member of multiple contributory retirement systems will receive a pension based on all the member's years of creditable service to the full extent permitted by those retirement systems. Towards that end, § 3(8)(*a*)[4]

---

[4]HRS argues that it should not be penalized because it returned the ac-

provides that the accumulated total deductions which fund the annuity portion of the benefit may be transferred within ninety days, and § 3(8)(c) provides that the retirement system that recognizes service in other contributory systems and that pays the pension portion of the benefit for all the years of service must be recompensed in full for the portion of the pension benefit attributable to service in another contributory system.

Most critical to the analysis here, G. L. c. 32, § 3(8)(c), provides that the method of computation for calculating the pension liability of the transferring fund shall be based on an actuarial computation which includes, among other things, all years of service in the transferring fund. The Legislature's choice of, and reliance on, the actuarial calculation of the cost of the pension benefit, rather than a simple reimbursement of employer contributions (with or without earnings due), reflects a legislative commitment to calculating the liability of the transferring fund in such a way that the receiving fund is fully compensated for the true actuarial cost of the pension benefit. As with the Veteran's Retirement Act, G. L. c. 32, § 59A, which contains analogous reimbursement provisions, the "Legislature has enabled governmental units that approve and pay pensions based on creditable service to units other than the paying unit to spread some of the cost of the pension to those other units." *Lexington* v. *Bedford*, 378 Mass. 562, 572 (1979).

It is against this backdrop that the CRAB decision must be reviewed. HRS argues that CRAB erred as a matter of law because Rosso was erroneously enrolled and, therefore, his service did not truly "pertain" to HRS in its capacity as the retirement system of the second governmental unit[5] under

cumulated total deductions, when it could have simply refunded the money to the employee in accordance with G. L. c. 32, § 20(5)(c)(2). We do not decide, hypothetically, whether HRS could have expelled Rosso and returned the contributions pursuant to G. L. c. 32, § 20(5)(c)(2), although we note that a direct refund of the accumulated total deductions to the employee, rather than a transfer to another participating retirement system, may have resulted in substantial and unnecessary tax consequences to the employee. See IRC § 3405; Treas. Reg. §§ 31.3405(c)-1, Q&A-1; 1.402(c)-2, Q&A-1(b)(3); 1.403(b)-2, Q&A-2(b). See also Treas. Reg. § 31.3405(c)-I, Q&A-2 (2006). Nor do we rest our decision on the fact that HRS complied with § 3(8)(a) in this instance.

[5]To the extent that HRS argues, in the alternative, that § 3(8)(c) requires

§ 3(8)(*c*). See generally *Arlington*, 75 Mass. App. Ct. 437. While Rosso was enrolled in error, he was nonetheless enrolled in HRS. HRS accepted the employer contributions made on his behalf, invested the money, and obtained the benefit of the investment earnings. For so long as HRS has use of the contributions and earnings (or losses), the other members of HRS obtain the benefit of his participation, and the employer contributions made on his behalf assist in funding the pensions of all HRS members and paying the benefits of HRS retirees and the costs of HRS administration. *Id.* at 444. In this way, his participation "pertained" to HRS. Permitting HRS to retain the actuarial value of the pension portion of the benefit, while leaving MTRS to pay the full pension, including the benefit attributable to the period for which HRS received contributions, would be contrary to the purpose and mandate of § 3(8)(*c*). Failing to require full funding of the retirement system that provides the pension benefit would defeat the statutory purpose of financial stability, would visit a windfall on the system that received contributions in error, and would discourage the detection and correction of errors in administration. In this "notoriously complex" area, see *Namay* v. *Contributory Retirement Bd.*, 19 Mass. App. Ct. 456, 463 (1985), we discern no error in the Superior Court judgment affirming the CRAB decision.

*Judgment affirmed.*

---

that Rosso be employed by two different governmental units, that question has already been addressed in *Arlington*, 75 Mass. App. Ct. at 443. There we held that although a member had been employed by only one governmental unit (Arlington), the member had participated in two different retirement systems, and that this dual participation satisfied the requirements of the statute.